**No. 25-2656**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

IN RE: TURKEY ANTITRUST LITIGATION

CARINA VENTURES LLC and AMORY INVESTMENTS LLC,
*Plaintiffs-Appellants*,

v.

CARGILL, INC. and CARGILL MEAT SOLUTIONS CORP.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Illinois, No. 1:19-cv-08318
Hon. Sunil R. Harjani

**REPLY BRIEF OF APPELLANTS
CARINA VENTURES LLC AND AMORY INVESTMENTS LLC**

> Derek T. Ho
> Christopher C. Goodnow
>   *Counsel of Record*
> Jonathan I. Liebman
> Jared M. Stehle
> Reno G. Varghese
> Zachary M. Meskell
> KELLOGG, HANSEN, TODD, FIGEL
>   & FREDERICK, P.L.L.C.
> 1615 M Street, N.W., Suite 400
> Washington, D.C. 20036
> (202) 326-7900
> cgoodnow@kellogghansen.com
>
> *Counsel for Plaintiffs-Appellants*

December 11, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................iv

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................1

ARGUMENT ......................................................................................3

I.  THE DISTRICT COURT ABUSED ITS DISCRETION IN
HOLDING THERE WAS NO EXCUSABLE NEGLECT ...............3

    A.  Reason for Delay ......................................................... 4

    B.  Length of Delay .........................................................16

    C.  Prejudice.....................................................................21

    D.  Good Faith..................................................................27

II.  CARINA AND AMORY UNAMBIGUOUSLY INDICATED
THEIR INTENT TO LITIGATE SEPARATELY..........................28

III.  THE COURT SHOULD STRIKE DPPS' BRIEF.........................32

CONCLUSION ................................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page

**CASES**

*Alexander v. Saul,*
    5 F.4th 139 (2d Cir. 2021) ............................................................. 6

*Ambriz v. Matheson Tri-Gas,*
    2016 WL 11757899 (C.D. Cal. Feb. 4, 2016) ................................ 24

*American Boat Co. v. Unknown Sunken Barge,*
    567 F.3d 348 (8th Cir. 2009) ......................................................... 6

*American Express Fin. Advisors Sec. Litig., In re,*
    672 F.3d 113 (2d Cir. 2011) ...................................................... 6, 25

*Aposhian v. Barr,*
    958 F.3d 969 (10th Cir. 2020) ..................................................... 28

*Ball v. Kotter,*
    723 F.3d 813 (7th Cir. 2013) ......................................................... 9

*Barnett v. Okeechobee Hosp.,*
    283 F.3d 1232 (11th Cir. 2002) ................................................... 12

*Bateman v. USPS,*
    231 F.3d 1220 (9th Cir. 2000) ................................................. 6, 17

*Boone v. Courtesy Boat Rentals & Yacht Charter, Inc.,*
    537 F. App'x 916 (11th Cir. 2013) ............................................... 16

*Bowman v. Korte,*
    962 F.3d 995 (7th Cir. 2020) ......................................................... 5

*Broiler Chicken Antitrust Litig., In re,*
    2019 WL 6699664 (N.D. Ill. Dec. 9, 2019) ................................... 9

*Canopy Fin., Inc., In re,*
    708 F.3d 934 (7th Cir. 2013) ....................................................... 12

*Deepwater Horizon, In re,*
    819 F.3d 190 (5th Cir. 2016) .................................................. 28, 29

*Diet Drugs Prods. Liab. Litig., In re,*
    401 F.3d 143 (3d Cir. 2005) .......................................................... 8

*Dolin v. GlaxoSmithKline LLC,*
    951 F.3d 882 (7th Cir. 2020) ...................................................... 30

*Easley v. Kirmsee,*
    382 F.3d 693 (7th Cir. 2004) .................................................... 1, 5

*G&J Fisheries, Inc., In re,*
    67 F.4th 20 (1st Cir. 2023) ........................................................ 18

*George Harms Constr. Co. v. Chao,*
    371 F.3d 156 (3d Cir. 2004) .......................................................... 6

*Hall v. Hall,*
    584 U.S. 59 (2018) ...................................................................... 33

*Harrington v. City of Chicago,*
    433 F.3d 542 (7th Cir. 2006) ...................................................... 4, 5

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013) .................................................................... 32

*Ingram v. Watson,*
    67 F.4th 866 (7th Cir. 2023) ........................................................ 13

*Johns-Manville Corp., In re,*
    476 F.3d 118 (2d Cir. 2007) .......................................................... 6

*Keeton v. Morningstar, Inc.,*
    667 F.3d 877 (7th Cir. 2012) ........................................................ 5

*KMart Corp., In re,*
    381 F.3d 709 (7th Cir. 2004) ............................................ 15, 17, 27

*Krivak v. Home Depot U.S.A., Inc.,*
    2 F.4th 601 (7th Cir. 2021) .......................................................... 5

*Kyle v. Campbell Soup Co.*,
   28 F.3d 928 (9th Cir. 1994) ........................................................... 21

*Lemoge v. United States*,
   587 F.3d 1188 (9th Cir. 2009) .................................................. 2, 27

*Lowry v. McDonnell Douglas Corp.*,
   211 F.3d 457 (8th Cir. 2000) ........................................................... 6

*Marino v. Ortiz*,
   484 U.S. 301 (1988) ...................................................................... 33

*Marquez v. Mineta*,
   424 F.3d 539 (7th Cir. 2005) ........................................................... 6

*McCarty v. Astrue*,
   528 F.3d 541 (7th Cir. 2008) ......................................................... 26

*Miami Nation of Indians of Indiana, Inc. v. DOI*,
   255 F.3d 342 (7th Cir. 2001) ......................................................... 30

*MMG Fin. Corp. v. Midwest Amusements Park, LLC*,
   630 F.3d 651 (7th Cir. 2011) ......................................................... 32

*Nafziger v. McDermott Int'l, Inc.*,
   467 F.3d 514 (6th Cir. 2006) ......................................................... 18

*Nat'l Org. for Women, Inc. v. Scheidler*,
   223 F.3d 615 (7th Cir. 2000) ......................................................... 33

*Navistar MaxxForce Engines Mktg., Sales Pracs., &*
   *Prods. Liab. Litig., In re,* 990 F.3d 1048
   (7th Cir. 2021) ......................................................................... 12, 15

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   2009 WL 6979779 (C.D. Cal. June 1, 2009)................................. 24

*Nimz Transp., Inc., In re,*
   505 F.2d 177 (7th Cir. 1974) ......................................................... 12

*Nunley v. City of Los Angeles*,
   52 F.3d 792 (9th Cir. 1995) ........................................................... 11

*Orthopedic Bone Screw Prods. Liab. Litig., In re,*
  246 F.3d 315 (3d Cir. 2001) ............................................................ 18

*Perrigo Institutional Inv. Grp. v. Papa,*
  150 F.4th 206 (3d Cir. 2025) ............................. 2, 17, 18, 23, 24, 29

*Pigford v. Johanns,*
  416 F.3d 12 (D.C. Cir. 2005) ..................................................... 22, 23

*Pincay v. Andrews,*
  389 F.3d 853 (9th Cir. 2004) ........................................................ 7, 16

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
  507 U.S. 380 (1993) ...................................................................... 2, 16

*Plunkett, In re,*
  82 F.3d 738 (7th Cir. 1996) .............................................................. 1

*Prizevoits v. Indiana Bell Tel. Co.,*
  76 F.3d 132 (7th Cir. 1996) .............................................................. 5

*Ragguette v. Premier Wines & Spirits,*
  691 F.3d 315 (3d Cir. 2012) ............................................................ 10

*Reales v. Consolidated Rail Corp.,*
  84 F.3d 993 (7th Cir. 1996) ............................................................ 21

*Robb v. Norfolk & W. Ry. Co.,*
  122 F.3d 354 (7th Cir. 1997) ....................................................... 7, 30

*Robinson v. Wix Filtration Corp.,*
  599 F.3d 403 (4th Cir. 2010) .......................................................... 10

*Salata v. Weyerhaeuser Co.,*
  757 F.3d 695 (7th Cir. 2014) .......................................................... 1, 9

*Santos-Santos v. Torres-Centeno,*
  842 F.3d 163 (1st Cir. 2016) ........................................................... 10

*Satkar Hosp. v. Fox Television Holdings,*
  767 F.3d 701 (7th Cir. 2014) ............................................................ 6

*Siddique v. Laliberte,*
  972 F.3d 898 (7th Cir. 2020) ........................................................ 19

*Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC,*
  534 F.3d 469 (5th Cir. 2008) ........................................................ 15

*Singson, In re,*
  41 F.3d 316 (7th Cir. 1994) ........................................................... 7

*Spears v. City of Indianapolis,*
  74 F.3d 153 (7th Cir. 1996) ......................................................... 20

*Two-Way Media LLC v. AT&T Inc.,*
  782 F.3d 1311 (Fed. Cir. 2015)....................................................... 6

*U.S. ex rel. Durcholz v. FKW Inc.,*
  189 F.3d 542 (7th Cir. 1999) ........................................................ 33

*UAL Corp., In re,*
  411 F.3d 818 (7th Cir. 2005) ........................................................ 25

*United States v. Avila,*
  134 F.4th 244 (4th Cir. 2025)....................................................... 12

*United States v. Brown,*
  133 F.3d 993 (7th Cir. 1998) ........................................................ 21

*United States v. Dvorkin,*
  799 F.3d 867 (7th Cir. 2015) ................................................... 30, 31

*United States v. Marbley,*
  81 F.3d 51 (7th Cir. 1996) ............................................................. 4

*Vergara v. City of Chicago,*
  939 F.3d 882 (7th Cir. 2019) ........................................................ 34

*Vitamins Antitrust Class Actions, In re,*
  327 F.3d 1207 (D.C. Cir. 2003)..................................................... 6, 7

*Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods.*
  *Liab. Litig., In re,* 895 F.3d 597 (9th Cir. 2018) ........................... 10

viii

*Wright v. Calumet City, Illinois,*
    848 F.3d 814 (7th Cir. 2017) .................................................. 32, 33

*Yeschick v. Mineta,*
    675 F.3d 622 (6th Cir. 2012) .................................................. 9, 10

*Yoder Co., In re,*
    758 F.2d 1114 (6th Cir. 1985) ...................................................... 11

**RULES**

Fed. R. Civ. P.:

Rule 23 .............................................................................. 2, 29

Rule 23(d)(2) ........................................................................ 29

Rule 54(b) ...................................................................... 33, 34

Rule 60(b)(1) ........................................................................ 17

Cir. R. 3(c)(1) ........................................................................ 34

## INTRODUCTION AND SUMMARY OF ARGUMENT

None of the egregious conduct at issue in Cargill's 102 cited cases remotely resembles what happened here – much less justifies the premature end of Carina and Amory's cases.  Undersigned counsel tried to fix – within hours of discovery – their good faith oversight of the docketed exclusion deadline for a settlement that already excluded these plaintiffs by name, and which these plaintiffs already rejected in public filings.  As in Cargill's cited caselaw, termination of a plaintiff's case is reserved for a much different case:  "outright and consistent disregard of . . . scheduling orders," *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004), "decade"-long "abandon[ment]," *In re Plunkett*, 82 F.3d 738, 741-42 (7th Cir. 1996), or "failure to appear at multiple status hearings" and "provide outstanding discovery . . . after being compelled by the court to do so," *Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 700 (7th Cir. 2014).  For all its efforts, Cargill identifies no case refusing to find excusable neglect on facts like those present here.

That is because, as Carina and Amory explained in their opening brief, the relevant caselaw uniformly supports reversal.  Cargill's arguments otherwise fail.  *First*, it repeats several of the district court's

legal errors.  Cargill insists (at 31) that "inadvertent attorney error" is "[i]nexcusable" despite the Supreme Court's unambiguous, contrary holding.  *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (courts may "accept late filings caused by inadvertence, mistake, or carelessness").  Cargill also claims (at 38-40, 43) that absence of court-ordered notice is irrelevant, even though no court ever has agreed, and several cases say the opposite.  *See* Br.34-35.  Finally, Cargill insists that district courts lack discretion to accept alternative forms of opt out, despite its cited cases counseling otherwise.  *See Perrigo Institutional Inv. Grp. v. Papa*, 150 F.4th 206, 215 (3d Cir. 2025) ("nothing in [Rule 23] requires district courts to accept any particular form of a request for exclusion").

*Second*, Cargill abandons the district court on two points:  it does not defend the court's holding that "late is late," S.App.8, or its conclusion that prejudice to Carina and Amory is irrelevant, *id.*  Cargill instead reasserts its prior error that accidental one-day delays are categorically inexcusable, and ignores that "being forever barred from pursuing [one's] claims" is "the ultimate prejudice," *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009) – including when the

2

defendant extracts a settlement at a low-ball price that the plaintiff expressly rejected.

*Third*, Cargill proposes that this Court make a new finding of fact that prior counsel for Sysco received court-ordered notice despite his declaration otherwise, which the court below declined to discredit. *See* Br.40. Further, Cargill's rank (and erroneous) speculation (at 27) that the public rejection of the settlement in March 2025 by Carina and Amory supposedly did not reflect "what they actually thought" is a desperate attempt to ignore the indisputable facts. No one thought that Carina and Amory wanted to settle.

At bottom, undersigned counsel made a few hours' mistake, which they regret. The question is whether a case-terminating sanction is appropriate. It is not, and this Court should reverse.

## ARGUMENT

### I. THE DISTRICT COURT ABUSED ITS DISCRETION IN HOLDING THERE WAS NO EXCUSABLE NEGLECT

Each *Pioneer* factor weighs strongly in Carina and Amory's favor. The district court abused its discretion in holding otherwise.

3

## A.     Reason for Delay

Dozens of courts – including this one – have forgiven an attorney's inadvertent failure to meet a deadline. *See* Br.28-32. Cargill offers no reason why this Court should treat this case differently.

**1.** *First*, Cargill insists (at 31) that "inadvertent attorney error" is "[i]nexcusable," but Cargill's cited cases (at 31-33, 35-36) do not prohibit district courts from forgiving honest mistakes. In *United States v. Marbley*, 81 F.3d 51 (7th Cir. 1996), the Court declined to extend a deadline because the appellant "fail[ed] to offer any excuse but merely recite[d] that he *ha*[*d*] an excuse." *Id.* at 52. Here, by contrast, the reasons for delay are straightforward: neither counsel, clients, nor assignors received the court-ordered notice; the settlement agreement set no opt-out procedure (indeed, it excluded Carina and Amory by its terms); and counsel overlooked the deadline that appeared on the docket weeks later. *See* Br.12-18, 35.

*Harrington v. City of Chicago*, 433 F.3d 542 (7th Cir. 2006), also does not ban excusing attorney error. *See* Opp.Br.31. There, the Court reiterated: "Although attorney carelessness can constitute 'excusable neglect' . . . attorney inattentiveness *to litigation* is not excusable." 433

4

F.3d at 546 (emphasis added).  The Court affirmed dismissal where

counsel "ignored the case for months on end," "missed several deposition

dates without explanation," "skipped" multiple status conferences, and

failed to "otherwise participat[e] in discovery."  *Id.* at 545-49.  That case

bears no relation to this one.  Cargill's other citations likewise involved

counsel's complete failure to litigate,[1] or an attorney who intentionally

disregarded a filing deadline merely because he had requested (but not

received) an extension, *see Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d

132, 133-34 (7th Cir. 1996).  No such facts are present here.

Cargill erroneously contends (at 32-33) that "[o]ther circuits

agree" courts are prohibited from excusing attorney error.  Like this

Court, the D.C. Circuit has held there is no "*per se* rule that garden

---

[1] *See Easley*, 382 F.3d at 695-99; *Krivak v. Home Depot U.S.A., Inc.*, 2 F.4th 601, 603 (7th Cir. 2021) (counsel failed to appear at conferences and showed "inattention" "over the course of two years"); *Bowman v. Korte*, 962 F.3d 995, 997 (7th Cir. 2020) (counsel submitted filing two years late for "unknown reasons"); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (counsel failed to respond to summary-judgment motion where "[t]he court had allowed [counsel] more than two months to respond to the motion," "counsel [had] a generous second chance to comply with the court's deadline," and "[c]ounsel had already failed to appear at a status hearing and also failed to complete discovery within the allotted time").

variety attorney inattention can never constitute excusable neglect." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003). Other circuits say the same. *See, e.g.*, *Bateman v. USPS*, 231 F.3d 1220, 1224-25 (9th Cir. 2000); *George Harms Constr. Co. v. Chao*, 371 F.3d 156, 164 (3d Cir. 2004).

Cargill's cited cases are not to the contrary. Several involve extreme delays or protracted inaction. *See, e.g.*, *In re American Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 130 (2d Cir. 2011) (opt-out request came "three years late"). Others concerned untimely notices of appeal, *see* Opp.Br.29, 32-33, 37,[2] where courts have "taken a hard line in applying the *Pioneer* test," because "the requirement of filing a timely notice of appeal is mandatory and jurisdictional," *Alexander v. Saul*, 5 F.4th 139, 142 (2d Cir. 2021) (cleaned up). For that reason, courts "doubt the applicability of such precedents" to the settlement opt-out

---

[2] Cases in this category include *In re Johns-Manville Corp.*, 476 F.3d 118 (2d Cir. 2007); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457 (8th Cir. 2000); *Two-Way Media LLC v. AT&T Inc.*, 782 F.3d 1311 (Fed. Cir. 2015); *Marquez v. Mineta*, 424 F.3d 539 (7th Cir. 2005); *Satkar Hosp., Inc. v. Fox Television Holdings*, 767 F.3d 701 (7th Cir. 2014); and *American Boat Co. v. Unknown Sunken Barge*, 567 F.3d 348 (8th Cir. 2009).

context.  *Vitamins*, 327 F.3d at 1209-10.  In any event, courts will forgive even late notices of appeal when the equities favor excusal.  *See, e.g.*, *Pincay v. Andrews*, 389 F.3d 853, 854 (9th Cir. 2004) (en banc).

Finally, Cargill is simply wrong that only "very compelling" or "extraordinary circumstances" are excusable.  Opp.Br.30, 32.  This case is compelling, but "it is possible to show 'excusable neglect' . . . without identifying any 'extraordinary' circumstance."  *In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994); *accord Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997).

**2.**  *Second*, Cargill backtracks and claims (at 33-34) that the district court never enforced a "bright-line rule against excusing mistakes," but rather evaluated Carina and Amory's reasons for delay and "found them lacking."  That is incorrect.  The court below rejected Carina and Amory's "excuses" because it concluded "[t]he Seventh Circuit has held that attorney error is not a sufficient reason to find excusable neglect."  S.App.4.  That holding merely restated the district court's legal error – which it repeated twice more.  *See* S.App.4-5 ("oversight by [one's] attorneys . . . is not a sufficient reason to find

7

excusable neglect"; and "attorney mistake . . . is not sufficient to amount to excusable neglect").

**3.** *Third*, Cargill proposes (at 37-40) another *per se* prohibition: counsel's oversight of "CM/ECF notice [is] inexcusable." But that is not the law, *see* Br.40-41, and Cargill does not show otherwise. It notes (at 40) that the attorney in *In re Diet Drugs Products Liability Litigation*, 401 F.3d 143 (3d Cir. 2005), "moved his office," but that is irrelevant: the attorney overlooked a docket entry for more than a month. *Id.* at 152-53. Nonetheless, the Third Circuit reversed and found excusable neglect because, "most important of all[, ]there was no danger that [counsel's] late filing could prejudice the Diet Drugs proceedings." *Id.* at 154. The same is true here. *See* Br.14-15.

Otherwise, Cargill asserts (at 40) that Carina and Amory's cited cases, *see* Br.40-41, are different because they involved reversals of poorly reasoned decisions. But that is true of the decision below, too. And, whatever the district courts' reasoning, the appellate courts concluded that receipt of docket notice did not foreclose excusable neglect. That makes good sense. Docket notices in sprawling litigation arrive almost daily; the docket in *Turkey* contains over 1,400 entries.

8

Individual notice is far less common and more likely to command attention. *See* Br.34-35, 40-41. In this case, moreover, docket notice and court-ordered notice were not the same. Only the individual notice included each customer's purchase volume, which Defendants were required to provide. *See* Br.13-14. Cargill faults Carina and Amory (at 45-47) for not reporting back those very same numbers. So, even on Cargill's telling, ECF notice did not provide Carina and Amory with the information they needed to opt out.

Cargill cites no case (at 37-40) supporting – much less mandating – dismissal for parties that miss a docket notification. *Ball v. Kotter*, 723 F.3d 813 (7th Cir. 2013), involved an email sent from a lawyer to his client; it did not address excusable neglect or docket notice. *See id.* at 830-31. *In re Broiler Chicken Antitrust Litigation*, 2019 WL 6699664 (N.D. Ill. Dec. 9, 2019), involved a plaintiff that "provided no reason for its [six-month] delay" and "simply failed to pay attention to its status in this case." *Id.* at *3. In *Salata*, the plaintiff inexplicably "fail[ed] to appear at multiple status hearings and . . . to provide outstanding discovery . . . even after being compelled by the court to do so." 757 F.3d at 700. Finally, in *Yeschick v. Mineta*, 675 F.3d 622, 630 (6th Cir.

9

2012), counsel knew for "more than a month . . . that his email address was no longer working" on CM/ECF but did nothing about it, and delayed "almost six months during which [counsel] did not check the docket." *Id.*[3]  None of these cases comes close to the single, inadvertent, and few hours' long oversight here.  *See* Br.17-18.

**4.**  *Fourth*, Cargill insists (at 37-38, 40-42) that Scott Gant received individual notice.  That is incorrect, first, because the notice supposedly sent to Gant was incomplete – it did not contain Sysco's and Maines' purchase volumes.  *See* App.648.  Cargill does not claim otherwise.  Moreover, Gant declared he did not receive the notice.  *See* Br.40.  He did not "recall receiving anything," was "pretty confident [he]

---

[3] Cargill's other cases are inapposite, too.  *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 408-09 (4th Cir. 2010) (counsel "knew full well" deadline was pending but "strategically chose not to call opposing counsel after the deadline . . . had passed"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 618 (9th Cir. 2018) (plaintiff "seemingly misunderstood clear directions" and waited over a month to opt out of settlement); *Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 166 (1st Cir. 2016) (counsel had "never checked the docket" until after final judgment was entered); *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 329-31 (3d Cir. 2012) (counsel's "highly problematic" office policies directed all notices to a different attorney, and counsel continued to delay after learning appeal was never filed).

did not," and he "conducted a search" and found nothing. App.694 ¶¶8-9. Gant's sworn declaration disclaims *receipt* and thus rebuts any "presumption" otherwise. *See* Br.34; *In re Yoder Co.*, 758 F.2d 1114, 1118, 1121 (6th Cir. 1985) ("Testimony of non-receipt, standing alone . . . [is] sufficient to rebut the presumption of receipt," and "[n]on-receipt is sufficient ground for excusable neglect."). There is little more anyone could do to prove the negative, *i.e.*, that he never received an allegedly mailed notice. *See, e.g., Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir. 1995) ("All that a party seeking to demonstrate non-receipt can normally do is to submit affidavits").

Cargill is also wrong to suggest (at 38) that the district court applied any "presumption," at all. Cargill writes:

> As before, a presumption arises that Gant received [the notice]. . . . And, as the district court found, "there is no evidence of returned mail or bounce-back email that could change that conclusion."

*Id.* (quoting S.App.6). Cargill implies that the district court found nothing to "change" the supposed "conclusion" that a presumption of receipt applied. But the court actually held:

> It is the notice provided (not received) that is the crux of the analysis. And in this case, there is no evidence of returned mail or bounce-back email that could change that conclusion.

11

S.App.6.  Thus, the court *never* discredited Gant's declaration – it could not, *see* Br.40 – or found that Gant received court-ordered notice.  This Court cannot affirm "based on factual findings the court never made." *United States v. Avila*, 134 F.4th 244, 248 (4th Cir. 2025).

Cargill also asserts (at 41-42) that courts ignore similar declarations.  But *In re Canopy Financial, Inc.*, 708 F.3d 934 (7th Cir. 2013), held that affidavits "must be accepted at face value in the absence of a hearing," and that "inaction is 'excusable'" where relevant documents "did not reach" the intended recipient.  *Id.* at 936.  *In re Nimz Transportation, Inc.*, 505 F.2d 177, 179 (7th Cir. 1974), also held that "direct testimony that the specific . . . letters were not received" rebuts any presumption of receipt.  Cargill's remaining cases are inapposite.  *See Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1241 (11th Cir. 2002) (movant offered only "the bare assertion of one member of the office" who lacked personal knowledge); *In re Navistar MaxxForce Engines Mktg., Sales Pracs., & Prods. Liab. Litig.*, 990 F.3d 1048, 1050 (7th Cir. 2021) (affidavit merely "disclaime[d] memory").

**5.**  *Fifth*, Cargill maintains (at 42-43) that Sysco and Maines received the court-ordered notice, despite the undisputed record that

emails to those entities bounced back and that the Settlement Administrator failed to follow up. *See* Br.39. Nor does Cargill contend that Maines received mailed notice – regardless whether it was sent to a defunct business address or a different town 120 miles away. *See* Br.39-40. As to Sysco, Cargill ignores Sysco's declaration. (So did the district court, which never discussed it. *See* S.App.1-9.) Sysco's legal team searched for, but "did not find[,] any such notices." App.695-696. Without hearing live from Sysco's witness, this Court must credit that declaration. *See Ingram v. Watson*, 67 F.4th 866, 871 (7th Cir. 2023).

**6.** *Sixth*, Cargill claims (at 43-45) that Carina and Amory knew about the settlement and so were not entitled to any notice of the opt-out procedure. More than that, Cargill requests (at 15, 34) that Carina and Amory receive a harsh sentence because they are "sophisticated litigants with experienced attorneys." Both arguments are incorrect.

This settlement excluded Carina and Amory by its terms. *See* Br.12-13. It differed from the Tyson settlement in that regard, which did not purport to exclude direct action plaintiffs from the settlement consideration or litigation standstill. *Compare* ECF 262-1 at 8, *with* App.256-257 & n.2. Cargill declines (at 45) to acknowledge the unique

13

language in its settlement.  That is unsurprising, as Cargill represented to the district court what it now disclaims:  that "[t]his settlement by its terms is limited to the DPPs."  ECF 1140 at 6:11-12.  The settlement says that "'DPPs' means Maplevale Farms, Inc., and John Gross and Company, Inc.," App.248 – not Carina and Amory.  Cargill also invokes (at 44) "the proposed notice filed with the settlement,"[4] but the settlement did not include DPPs' "proposed notice," *see* ECF 1100.  That proposal also had no deadline, as the court had not entered it.  *See* ECF 1101-2 at 2.

Regardless, even if the settlement had indicated that Carina and Amory were required to opt out, there is no dispute that the settlement failed to prescribe any process or deadline.  That only came weeks later. *See* Br.35.  Thus, with the settlement alone, it would have been impossible to opt out.

Cargill asks the Court (at 44-45) to hold that counsel's failure affirmatively to ascertain the opt-out procedure and deadline for an as-yet unapproved settlement, which excluded their clients by name, is

---

[4] Cargill appears to refer to a separate docket entry containing a declaration by the Settlement Administrator.  *See* ECF 1101-2.

*never* excusable.  But it cites no authority for that radical proposition.

Cargill's cases deal with counsel who had knowledge of deadlines but

disregarded them anyway.  In *Navistar*, the district court denied a late

opt out because the plaintiff "had actual knowledge . . . of the need to opt

out," but intentionally chose not to so he could "take the greater of the

class-action settlement or the result in" state court.  990 F.3d at 1051.

Counsel in *In re KMart Corp.*, 381 F.3d 709, 711-12, 714 (7th Cir. 2004),

had actual knowledge of the deadline yet delayed for months before

seeking judicial relief.  And counsel in *Silvercreek Management, Inc. v.*

*Banc of America Securities, LLC*, 534 F.3d 469 (5th Cir. 2008), conceded

receipt of court-ordered notice, which clearly informed them that the

opt-out deadline passed several weeks before they finally requested a

belated opt out.  *See id.* at 471-72.

Finally, Cargill's suggestion that the Court should make an

example of Carina and Amory because they are "sophisticated" is

specious.  Courts routinely forgive the neglect of experienced counsel

and sophisticated parties.  The Supreme Court, for example, excused

the neglect of a "sophisticat[ed]" bankruptcy creditor with "actual

knowledge of the bar date," represented by "an experienced bankruptcy

15

attorney." *Pioneer*, 507 U.S. at 384, 386; *see also Pincay*, 389 F.3d at 854 (excusable neglect where "sophisticated law firm" missed deadline to file appeal); *Boone v. Courtesy Boat Rentals & Yacht Charter, Inc.*, 537 F. App'x 916, 916 (11th Cir. 2013) (per curiam) (reversing dismissal where attorney "made a simple calendaring error").  This Court likewise should excuse undersigned counsel's inadvertent, good faith mistake.

## B.    Length of Delay

Cargill does not defend (at 45-50) the district court's violation of Supreme Court precedent.  *See* Br.44-47.  Nor does it dispute the material facts:  (1) The few hours' delay had no impact on the *Turkey* case, Br.44; (2) Cargill had the information required by the court's notice plan long before April 21, Br.66-67; (3) the Settlement Administrator never required 100% assignees, like Amory and Carina, to report a numerical purchase volume, Br.9-10, 67; (4) the Administrator identified only one flaw in Carina and Amory's opt-out notice:  it was late, Br.19; and (5) "whether Carina or Amory are in or out, the settlement will stand between the parties," S.App.7.  On that record, Carina and Amory's delay was de minimis.  Cargill's arguments otherwise are meritless.

16

**1.** *First*, Cargill complains (at 46) it should not have to "search through its own records" to "fill in the blanks on opt out requests." But that is precisely what the notice plan required: Cargill had to fill out each recipient's "Claim Form" with its purchase volumes. Br.13-14. Further, Cargill earlier demanded years of discovery from Carina and Amory regarding their assignments. *See* Br.11-12. It vigorously challenged their standing to sue and presented oral argument in Carina's case on April 23 – two days after the opt-out deadline. *See id.*; ECF 1249. Carina and Amory also expressly identify their assignors in their complaints. *See* Br.66. Thus, Cargill's suggestion (at 46) that it was "difficult" to identify Carina's and Amory's assignors and assignment agreements (which they already had) or their purchase volumes (which they were required to calculate) is specious.

These facts bear no relation to Cargill's cited cases (at 46). In *KMart*, the party took "*eighty-one* days" before "get[ting] around to requesting judicial relief." 381 F.3d at 714. Carina and Amory, by contrast, filed their motion within nine days. *See* Br.1; App.494; *see also Bateman*, 231 F.3d at 1225 (prompt filing of Rule 60(b)(1) motion favored excusal); *cf. Perrigo*, 150 F.4th at 219 (district court allowed

class members who "expeditiously moved to be excluded after the opt-out deadline" to opt out).  In *Nafziger v. McDermott International, Inc.*, 467 F.3d 514 (6th Cir. 2006), the untimely party delayed 37 days before filing a motion and committed "numerous instances of previous dilatory conduct," despite the "court's repeated warnings."  *Id.* at 522-23 (cleaned up).  Finally, in *In re G&J Fisheries, Inc.*, 67 F.4th 20 (1st Cir. 2023), the party "made no attempt to remedy his failure . . . for a full year."  *Id.* at 30 (cleaned up).  These cases are irrelevant.

Regardless, even if Carina and Amory's opt-out email were deficient, that would not meaningfully increase the "length" of their delay.  Where an untimely party bypasses the opt-out process and seeks relief from the court in the first instance, "the operative period" for calculating the "length of . . . delay" "is the time between when the opt-out notice should have been filed versus the date leave was sought to file it late."  *Perrigo*, 150 F.4th at 218; *accord In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 325 (3d Cir. 2001).  Carina and Amory requested to file their untimely opt out on April 22 (one day after the deadline), heard back from the Settlement Administrator on April 28 (seven days after the deadline), and sought relief from the court on

18

May 6 (within nine days thereafter and, all told, 15 days after the deadline). Whichever number of days the Court considers, Carina and Amory's delay had no impact on the *Turkey* proceedings. *See* Br.44.

**2.** *Second*, Cargill accuses Carina and Amory (at 47) of intentionally withholding their purchase volumes from the Settlement Administrator. The district court, however, found that Carina and Amory acted in good faith, *see* S.App.8, and never before has Cargill accused them of subterfuge. Its argument is thus forfeited. *See, e.g.*, *Siddique v. Laliberte*, 972 F.3d 898, 905 (7th Cir. 2020).

In any event, it is also insubstantial. On August 26, Carina and Amory told the Settlement Administrator they would make a claim on the Cargill settlement if (and only if) this Court declines to reverse the decision below. ECFs 1377-1; 1377-2. That conditional claim included "volume-of-commerce information." Opp.Br.47. But that is because Carina and Amory, by that point, had submitted their opening expert report, which calculated their purchase volumes. *See* App.323-325. They did not have that calculation in April. *See* Br.18.[5] And, more to

---

[5] Cargill also asserts (at 47) that Carina and Amory had calculated their purchase volumes by February 2025, when they stated in a letter to DPPs that their "volume of commerce in *Turkey* is $2.3

19

the point, it is excusable that Carina and Amory did not calculate

purchase volumes for 10 defendants across eight years in the hours

between learning of the deadline and submitting their opt-out request.

Indeed, it was *Cargill's and DPPs'* responsibility to calculate and

provide purchase volumes to opt outs.  They did not.  Carina and

Amory's failure to provide what they did not receive is understandable –

and not a reason to deny their opt-out request, in all events.  *See* Br.68

n.8.

    **3.**  *Third*, Cargill contends (at 47) that Carina and Amory's few

hours' delay is inexcusable because they "waited until the last minute."

But Carina and Amory learned of the deadline only after it passed; they

did not choose to wait until the final hour.  Cargill's cases (at 47)

involve examples of reckless indifference not at issue here.  *See Spears*

*v. City of Indianapolis*, 74 F.3d 153, 157-58 (7th Cir. 1996) (denying

---

billion."  ECF 1139-2 at 2.  But that was a first-cut estimate of Carina
and Amory's purchases between 2008 and 2016 (their damages period)
– *not* 2010 and 2016, as the notice plan required.  *See* App.300.  Nor did
that estimate provide a defendant-by-defendant itemization of
purchases, likewise required by the notice plan.  *See* App.300.  In sum,
on April 22, Carina and Amory did not have the information that
Cargill now accuses them of hiding.

third extension given plaintiff's "backdrop of dilatory tactics," including "continually ignor[ing] deadlines and seek[ing] neverending extensions"); *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996-97 (7th Cir. 1996) (similar); *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931-32 (9th Cir. 1994) (counsel added "three days for service by mail" to deadline, despite "nonambiguous rules" providing otherwise).  Other cases about jurisdictional deadlines (at 47) are likewise inapposite.  *See supra* p.6-7.

**4.**  *Fourth*, Cargill proposes (at 48) that missing a deadline by hours is *per se* condemnable when there is no "valid excuse."  That argument fails for reasons discussed above, *see supra* pp.4-16, and because it fundamentally misconstrues *Pioneer*.  That case "ma[de] clear that the [excusable neglect] standard is a balancing test," *United States v. Brown*, 133 F.3d 993, 997 (7th Cir. 1998), so no single factor is dispositive, *see id.* ("a delay might be excused even where the reasons for the delay are not particularly compelling").

## C.    Prejudice

The district court found it makes no difference to Cargill whether Carina and Amory opt out:  either way, "the settlement will stand between the parties."  S.App.7.  Carina and Amory, meanwhile, suffer

21

maximal prejudice from a forced settlement:  termination of their cases.

Yet the district court dismissed Carina and Amory's fate as irrelevant,

and found that Cargill would be prejudiced if it continued to litigate as

it planned.  *See* S.App.7-8.  Cargill fails to defend that backward result.

1.  *First*, Cargill maintains (at 50-51) that "extending the deadline

would have deprived [it] of the benefit of its bargain":  "certainty and

finality."  But Cargill would continue to get precisely what it bargained

for:  finality with the DPP class.  Cargill never endeavored to settle

Carina's and Amory's cases; rather, it excluded them from the litigation

standstill (and so anticipated litigating against them), and excluded

their purchases from the settlement consideration (and so did not offer

any compensation for their damages).  *See* Br.12-13.  Indeed, Cargill

concedes (at 50) that "[i]f Carina and Amory had been allowed to opt out

late, the settlement consideration would have remained the same."

Cargill never offered anything to settle Carina's and Amory's cases.

Cargill's reliance (at 51) on *Perrigo* and *Pigford v. Johanns*, 416

F.3d 12 (D.C. Cir. 2005), is misplaced.  *Perrigo* rejected the argument

Cargill makes here:  it held that "upsetting a defendant's interest in

resolving all claims against it does not suffice to establish prejudice."

150 F.4th at 217.  The court found the defendant would be prejudiced by a three-year-late opt out because "[p]ermitting [the movant] to opt out at that late stage had the prospect of sending the parties back to the drawing board to negotiate a new settlement in light of the diminished class."  *Id.* at 218.  That is not this case:  "whether Carina or Amory are in or out, the settlement will stand between the parties."  S.App.7.

As to *Pigford*, the district court already had extended the filing deadline twice.  *See* 416 F.3d at 15.  It declined to do so a third time "because the deadlines were negotiated and agreed to by plaintiffs," and the defendant already had "agree[d] to admit" more than 1,100 claimants "who otherwise would have been excluded" in exchange for a firm deadline, *id.* at 21.  Here, by contrast, the district court offered no extensions, and Carina and Amory never bargained for the April 21 date.  *See* Br.17-19.

**2.**  *Second*, Cargill speculates (at 51) that permitting Carina and Amory to opt out could have "result[ed] in 'a mountain of' untimely opt-out requests."  But Carina and Amory are the only parties that sought a belated opt out – and the only parties that had opposed the settlement on the record.  *See* App.374; App.384 n.8.  Courts permit late opt outs in

23

similar circumstances. *See, e.g., Negrete v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 6979779, at \*3 (C.D. Cal. June 1, 2009); *Ambriz v. Matheson Tri-Gas*, 2016 WL 11757899, at \*3 (C.D. Cal. Feb. 4, 2016).

3. *Third*, Cargill laments (at 52) that "allowing Carina and Amory to opt out late would 'increase the cost' of litigation." But "merely having to continue to defend an ongoing lawsuit is not – without more – prejudicial enough to bar a party from opting out of a class action." *Perrigo*, 150 F.4th at 217 n.8 (cleaned up). In any event, Cargill always expected to litigate against Carina and Amory, *see* Br.15-17, it is still litigating against other direct-action plaintiffs, and the district court has explained it "can [] manage[]" "the issue of the schedule" in the event of reversal, ECF 1388 at 15:18-25. Indeed, Cargill already has disclosed an expert that purports to review and consider the opinions and analyses in Carina and Amory's expert report.

4. *Fourth*, Cargill hints (at 53) that it might not have expected continued litigation against Carina and Amory. That is nonsense. It expressly contemplated litigation when it excluded Carina and Amory from the settlement's litigation standstill. *See* Br.12. Years ago, Cargill agreed that "Amory opted out of the purported DPP class." ECF 802

24

¶ 20.  Even while it was briefing this dispute in the district court, it told the court (and the public) that it had *not* settled with Carina and Amory.  *See* Br.20.  And now, Cargill still declines to represent that it expected the litigation to end.  That is because it did not.  This case is thus completely different from *American Express*, where the plaintiff requested to opt out "three years late," and so the defendant "had every reason to think" the case was at its end.  672 F.3d at 130.

**5.**  *Fifth*, Cargill disclaims (at 54) any windfall.  But it recognizes that "[a] windfall occurs when one party profits from another's mistake," and it concedes it paid nothing to settle Carina and Amory's claims:  it agreed to pay $32.5 million "whether Carina or Amory are in or out."  *Id.* (quoting S.App.7).  Getting something for nothing, while Carina and Amory lose nearly everything, is precisely what courts seek to avoid.  *See, e.g., In re UAL Corp.*, 411 F.3d 818, 823-24 (7th Cir. 2005) ("When an innocent mistake can be rectified without harm to anyone . . . , it should be.").  And it is cold comfort that Carina and Amory might receive a pittance from the settlement fund if this Court declines to reverse the decision below.  *See* Opp.Br.56.  Even without joint-and-several liability, Carina and Amory's claims against Cargill

are worth millions of dollars – far more than the 2% of the class settlement that DPPs have indicated they might receive. *See* S.App.7. Absent reversal, Cargill will wipe out its liability for free.

**6.** *Sixth*, Cargill demands (at 54-55) that Carina and Amory's "unexplained failure to meet the opt-out deadline" should foreclose relief, regardless of prejudice. That is twice wrong: Carina and Amory have articulated the reason for their delay, and any failure to do so would not be dispositive. *See supra* pp.4-16. Cargill's authorities are not to the contrary. In *McCarty v. Astrue*, 528 F.3d 541, 545 (7th Cir. 2008), the Court held that the absence of prejudice did not compel relief; it did not hold that attorney error is inexcusable. And *Bowman*, *Prizevoits*, and *Marquez* are irrelevant for reasons discussed. *See supra* pp.5-6.

**7.** *Seventh*, Cargill does not defend (at 55-57) the district court's decision to ignore the prejudice to Carina and Amory: termination of their cases against Cargill.[6] It responds, instead (at 55-56), that the

---

[6] Cargill briefly suggests (at 56) that Carina and Amory did not tell the district court that they objected to termination of their cases. That is patently absurd. They requested that the district court decline

settlement is fair, and that Carina and Amory should be content with their meager compensation. Carina and Amory disagree that fractions of pennies on the dollar are adequate. *See* Br.16. But, more importantly, "being forever barred from pursuing [one's] claims" is "the ultimate prejudice," *Lemoge*, 587 F.3d at 1196 – including at bargain basement prices the plaintiff already rejected.

## D. Good Faith

The district court found that Carina and Amory acted in good faith but accorded that factor no weight. *See* S.App.8. Cargill protests (at 58) that "[a] district court need not excuse neglect just because the movant acted in good faith." That is a red herring: Carina and Amory never have argued that their good faith, on its own, mandates reversal. Rather, the district court failed to balance Carina and Amory's good faith among the *Pioneer* factors and other equitable considerations. *See* Br.55-58. Cargill implies (at 58) the district court did so, but it points to no such analysis because there is none. Finally, its reliance on *KMart* (at 58) does not help it, as the lower court's failure to weigh good faith

---

to impose the "ultimate prejudice," ECF 1290 at 10, of "a case terminating" sanction, DPP.Supp.App.9.

was harmless because the factor was "inconclusive." 381 F.3d at 716.

Here, Carina and Amory indisputably acted in good faith.

## II.   CARINA AND AMORY UNAMBIGUOUSLY INDICATED THEIR INTENT TO LITIGATE SEPARATELY

The district court erred, as a matter of law, in holding it lacked discretion to accept an alternative form of opt out. *See* Br.60-63. The court also manifestly erred, as a matter of fact, in finding that Carina and Amory failed to oppose the settlement with sufficient clarity. *See* Br.63-68. Cargill fails to defend either decision on appeal.

**1.** *First*, Cargill repeats (at 19-21) the district court's erroneous holding that *Navistar* and *Broilers* forbid a court to accept an opt out that does not comply with its procedures. Though those cases rejected the argument that a "separate lawsuit" suffices, Opp.Br.19, that does not mean district courts lack discretion to consider anything else, *see* Br.61-62. Cargill fails to respond to this simple point: *Navistar*'s holding that a court need not accept an alternative opt out does not prohibit it from doing so. *See Aposhian v. Barr*, 958 F.3d 969, 981 (10th Cir. 2020) ("'need not' does not mean 'may not'").

Neither *In re Deepwater Horizon*, 819 F.3d 190 (5th Cir. 2016), nor *Perrigo* eliminates a district court's discretion. In *Deepwater Horizon*,

28

the Fifth Circuit identified several cases holding "that an opt out request need not perfectly conform to the format chosen by the district court," and reserved for another day "whether to adopt the [reasonable-indication] approach." *Id.* at 196. *Perrigo*, meanwhile, rejected that "a class member *must* be excluded from the class whenever it has 'provided a "reasonable indication" of its intention to opt out.'" 150 F.4th at 214 (emphasis added). The Third Circuit did not hold that a district court *never* may accept an alternative opt out. To the contrary, it emphasized that "Rule 23 does not fix how a class member must request exclusion," and explained that "nothing in [the Rule] requires district courts to accept any particular form of a request for exclusion." *Id.* at 215 (emphasis omitted). Under Rule 23, moreover, a court may modify its procedures in its discretion. *See* Fed. R. Civ. P. 23(d)(2). A district court retains discretion to accept an alternative form of opt out.

Cargill also claims (at 23) Carina and Amory "fail[ed] to ask [the] district court to 'exercise[] its discretion,'" effecting a forfeiture. But, as Cargill recognizes, Carina and Amory correctly told the district court it was "free to accept" – not that it *had* to accept – "any 'reasonable indication'" of an intent to opt out. *Id.* Elsewhere, Carina and Amory

29

explained that Seventh Circuit law "d[id] not require [the district court] to blind itself to the[] undisputed facts." ECF 1290 at 4. They never argued that the district court was *obligated* to permit an alternative opt out on those facts. Any claim of forfeiture is baseless.

    **2.** *Second*, and in the alternative, Cargill implies (at 24) that the district court's failure to exercise its discretion was harmless. But failing to exercise discretion is legal error, no matter how "uncanalized that discretion." *Miami Nation of Indians of Indiana, Inc. v. DOI*, 255 F.3d 342, 350 (7th Cir. 2001); *accord Robb*, 122 F.3d at 357. Cargill has no harmless-error defense. *See Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 889 (7th Cir. 2020) ("the failure of the trial court to exercise its discretion at all constitutes an abuse of discretion") (cleaned up). This Court cannot exercise the district court's discretion in its place. *See United States v. Dvorkin*, 799 F.3d 867, 883 n.37 (7th Cir. 2015) ("Although we agree that the district court would not have abused its discretion had it offered a legitimate, independent reason for its ruling, . . . the record here clearly shows that it never did so.").

    **3.** *Third*, in the alternative yet again, Cargill suggests (at 23) that the district court exercised its discretion to invoke "an unqualified right

30

to enforce opt-out procedures as written." Not so: the court declined to accept Carina and Amory's alternative opt out because they supposedly did nothing more than "proceed[] with a separate action," S.App.2, and failed to identify their assignors (among other things) to the Settlement Administrator, *see* S.App.3. Those holdings were an abuse of discretion, *see* Br.64-65, even if the district court could have invoked other bases for its decision. This Court cannot rewrite the opinion below to save it. *See Dvorkin*, 799 F.3d at 883 & n.37 (declining to affirm based on "other reasons" inferred by the government rather than the "district court's only stated reason").

**4.** *Fourth*, Cargill asserts (at 26) that Carina and Amory did not reasonably indicate their intent to opt out because "filing their own suits" is not enough. But Carina and Amory did much more – including publicly rejecting the Cargill settlement. *See* Br.15-17. Cargill identifies no other case (at 27-28) where untimely plaintiffs expressly rejected the settlement in issue. Instead, Cargill speculates (at 27) that Carina and Amory lied: they "critique[d] the Cargill settlement" just to "forestall" a common-benefit fund, hiding from everyone "what they actually thought of the settlement." That accusation is fanciful. Carina

31

and Amory did not lie in wait to collect from the settlement fund. *See supra* pp.25-27.

## III. THE COURT SHOULD STRIKE DPPS' BRIEF

DPPs have filed their own brief that parrots Cargill's brief and does not contribute to this Court's consideration of Carina and Amory's appeal. The Court should strike DPPs' brief because they lack standing to participate in this appeal and are not a proper party here.

*First*, a litigant must demonstrate, "at all stages of review," "that he possesses a . . . 'personal stake,' in the outcome of the action." *Wright v. Calumet City, Illinois*, 848 F.3d 814, 816 (7th Cir. 2017); *see Hollingsworth v. Perry*, 570 U.S. 693, 712 (2013) ("Standing to defend on appeal . . . demands that the litigant possess 'a direct stake in the outcome.'"). Below, DPPs "t[ook] no position on Carina/Amory's request for waiver of the exclusion deadline." App.517. DPPs repeat (at 16) that they "take no position on application of the standards . . . to the District Court's rejection of Carina and Amory's" opt-out request. Thus, they have no personal stake in this appeal. At a minimum, DPPs have waived any arguments for affirmance. *See MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 659 (7th Cir. 2011).

32

DPPs' concern (at 16) for "the adequacy of the notice in this case" does not convey appellate standing. "An abstract interest in a matter never has been considered a sufficient basis for . . . litigation in the federal courts." *Wright*, 848 F.3d at 818. Here, Carina and Amory do not challenge the adequacy of the notice plan; the issue is that court-ordered notice never was received. Thus, DPPs' opinions (at 9) about what "is elementary for every practitioner," and its thoughts (at 15) about "policy grounds," are academic. If DPPs wanted this Court to hear their views, they needed to seek permission to file an amicus brief. They did not do so, as any such motion would have been denied. *See Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616-17 (7th Cir. 2000).

*Second*, DPPs are not proper parties to this appeal. *See U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 543 n.1 (7th Cir. 1999) ("ignor[ing] the written and oral arguments" of litigant who was "not a proper party to this appeal"). A party on appeal must have been a party to the judgment under review. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988). DPPs are not a party to Carina's and Amory's individual cases against Cargill, *see Hall v. Hall*, 584 U.S. 59, 70 (2018) (consolidation

33

"does not . . . make those who are parties in one suit parties in another"), in which the district court entered judgment under Federal Rule of Civil Procedure 54(b), *see* S.App.10-15.

DPPs have also forfeited any argument otherwise. Carina and Amory's docketing statement identified that "[t]he sole parties to this appeal are Carina, Amory, and the two Cargill entities." Dkt.6 at 2. Three attorneys for DPPs entered appearances, *see* Dkts.2, 3, 4, and received Carina and Amory's docketing statement. DPPs were required to review it and address any inaccuracies within 14 days of its filing. *See* Cir. R. 3(c)(1). Because DPPs never objected to the statement, they have forfeited any argument it was "not complete and correct." *Id.*; *see Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019).

## CONCLUSION

The district court's order should be reversed, and Carina and Amory should be deemed opted out of the Cargill settlement.

34

Dated:  December 11, 2025        Respectfully submitted,


/s/ *Christopher C. Goodnow*

Derek T. Ho
Christopher C. Goodnow
  *Counsel of Record*
Jonathan I. Liebman
Jared M. Stehle
Reno G. Varghese
Zachary M. Meskell
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
cgoodnow@kellogghansen.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Circuit Rule 32(c) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 6,995 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated:  December 11, 2025          /s/ *Christopher C. Goodnow*
                                   Christopher C. Goodnow

## CERTIFICATE OF SERVICE

I certify that, on December 11, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Christopher C. Goodnow*
Christopher C. Goodnow